Good morning, your honors. May it please the court, counsel, Mr. Oberholtzer. My name is Terrence Kellogg. I represent appellant Daniel Oberholtzer. I'm the first to agree that it's very unusual to have a criminal appellant attend oral argument, but having served a sentence, Mr. Oberholtzer is glad to be here. He's taken an active interest in this because he's the one who has the $716,055 personal money judgment entered against him, which is the primary focus of our appeal. In fact, it's the exclusive focus of our appeal. Mr. Oberholtzer and I have a little disagreement being, in my eyes, the difference between a layperson and a lawyer that I'll get to in a second. I did want to reserve four minutes if possible, and I will be watching my time. Thank you. Your honor, I think that, or your honors, probably the best way to consider our issues is to look at it in a temporal fashion, and by that I mean the statutory authority for the government to seek a forfeiture of proceeds is at the time of sentencing. That's all. Yet, Mr. Oberholtzer has to live with this personal money judgment, which according to case law is enforceable as any other judgment, for a period of time which, we submit in our briefs under Washington law, would be 10 years subject to renewal for a second 10 years prior to the expiration of the initial 10-year period. Maybe you could help me on this. I'm having trouble understanding how you can argue that your client isn't subject to a money judgment when U.S. v. Casey says otherwise, and your client expressly agreed to such a judgment in the sentencing memorandum and in the plea agreement. If you look at page 1 of defendant's sentencing memo, it states that he agreed to forfeiture of property, including computers and digital devices, business and financial records, and a money judgment to be determined at the time of sentencing. Thank you, your honor. I can break that down into what I think are two different issues. One is Casey. Casey's obviously the rule of the circuit, and there's case law from other circuits that say the same thing about the ability to enter a personal money judgment. I suppose that there were three things that any appellate lawyer would be able to do given the rules of the circuit under Casey. Two of them are less bad. They're all bad. One is to give up and just say, well, Casey's decided this case. Pack your bags. Don't take an appeal. There's no way you're going to win because of Casey. The second thing to do is to write a brief and argue the point, ignoring Casey. That won't fly. It would take this panel and its law clerks about, what, two minutes to find Casey, to find that Casey has not been overturned. So we took the third course, which is, here we are. We know that you as a panel are bound by Casey. Judge Gould taught me that. He did. I suggested that Judge Gould's panel revisit an issue, and that's how I learned about the law of the circuit. So all we can do is implore this panel to carefully consider the arguments that we've made and will make, and why we're making them. Because we believe that we're right and that to effect a change, we're going to have to have en banc review. No question about that. And I want to spend my time talking about why Casey is wrong. Mr. Oberholzer wants me to spend my time talking about why we should have a factual remand so that justice could be done. And I want to answer the second part of your inquiry, Your Honor, and that is the plea agreement. The government, in its responsive brief, in a footnote, said, we could say that the right to appeal has been waived, but we're not going to. We're only going to say that it's been waived in so far as the judgment and sentence, and everything through the district court level, incorrectly referring to what statute we're talking about, can be waived. Well, I'm kind of focusing on, you said that your client wants a remand. I'm wondering, sometimes be careful what you wish for, because in U.S. v. crime from beginning to end. Didn't your client get a break when the district court limited the proceeds of Connect Zone's counterfeit sales-to-revenue generated during only five of the ten years spanning the conspiracy? And so you could go for a remand, and then you could get all ten. Your Honor, Mr. I don't think he got a break. First of all, I don't think that that's what Judge Jones did. What Judge Jones did is he said, well, this conspiracy started in 2003 and went on for ten years, and I'm comfortable with relying upon the length of time that the conspiracy existed and continued as the basis in part for my decision. So when we're talking about the difference between $716,000 and what? Whatever more could the government prove? We submit nothing. We submit that had this been done procedurally, correctly, according due process, first of all, Casey should not permit the court to do this. And that's the Voight decision, where early on, early on, when you trace all these cases back, that Ninth Circuit panel said, we as judges should not be rewriting statutes to enable a result just because we think it's better policy. And that's what's happened here. So yes, Your Honor, you're right. We could get a remand. Mr. Oberholzer wants a remand. I want Casey readdressed. Well, it just seems that it would be hard to say that was vindictive prosecution if, you know, if you say, no, you didn't do it right. And then since that Inafuku case says it could span, the conspiracy spans the ten years, I don't know what would happen. But, you know, I, and, but it could, you know, I have seen situations where it gets worse for people. Oh, I believe you. I've represented a lot of people. And it isn't always, it isn't always vindictive prosecution. If someone asks it, if they pick the scab off and say, we'll go in back and do it, then sometimes it's not good. And my point is, there's only so much blood to give. Okay. The point of the conspiracy raises the ex post facto argument, in addition to the due process argument, because it wasn't until late on and whether the government's correct that are taking the position that it was 2008, that they, the government could start doing this or 2006. That's still way, way, almost halfway through the conspiracy. That's one thing. Another thing, though, that the judge here applied beyond a reasonable doubt. Oh, well, Your Honor. It appears from Shryrock that it's preponderance of the evidence. Let me say this, Your Honor. I want, if we're going to have a remand, it's going to be with And to do it right, we would have to deal with our concerns that arose from this rush to judgment, the denial of the continuance, the expedited procedures that are set forth in the drug forfeiture provisions for how we have a hearing immediately preceding imprisonment being meted out by the court because the forfeiture determination has to be made before sentencing. So all this happens on the same day. You look at the supplemental excerpts of records at pages 20, and I marked it because I was so pleased that the government had filed a supplemental excerpt of record. Pages 20 and 43. And you get a feel for what we were up against. I was in counsel at the time. What Mr. Oberholzer and his attorney at the time were up against in preparing for this, why they wanted a continuance. And they're in court with a renewed motion for continuance on June 24th. And it's denied. And you look at those two pages of the supplemental excerpt of records, and you're seeing that Mr. Barbosa on behalf of the government is saying, well, you know, you don't really have to worry about this because the amount of restitution that we're seeking, $1.2 million, is going to be the same as the dollar amount of the forfeiture. So you don't need a continuance. And then that changed by $500,000 before the hearing even starts. And the amount of restitution that was ordered was $14,000. In response to your question about aren't you afraid of a remand because it would not be a vindictive prosecution, we've got all kinds of arguments, beginning with due process. What Judge Jones did is he threw in the kitchen towel. I'm sorry, I don't mean to be yelling. I can hear you. He threw in the kitchen towel. He didn't say we're looking at these QuickBook records for this two-year period of time, and that's also part of the reason for the continuance. I think you mean the sink, not the towel. I've never been known to throw in the towel, Your Honor. And I don't want to throw in the sink. I want to focus on what's important here. And what's important here is that going into this hearing, we kind of knew what to expect. But coming out of the hearing, the record is, Judge Jones says, this was a 10-year conspiracy. This was going on forever. I'm considering the entire record. I'm looking at the pre-sentence report. I'm considering everything that's ever been filed. There's no indication factually as to what exactly that is. I'd like to reserve my time. I'm sorry. Go ahead, Your Honor. What did the pre-sentence report say about – what were the numbers in the pre-sentence report? Oh, I would eventually – Well, go ahead and look at it and tell me why you were surprised at the hearing. All right. You can do that on rebuttal. Right. Pardon me? You can do it on rebuttal. You can look at the pre-sentence report and then remind us why you were surprised at the hearing at the numbers that were mentioned. Thank you. All right. We'll hear from the government. Your Honors, may it please the Court, Charlene Kosky for the United States. Were you the attorney in the district court? I was not. Regarding Mr. Oberholtz's arguments on Casey, I will only briefly say that those arguments are foreclosed by Casey. So unless there are specific questions that you have, I'll move on to the other issues. We'll wait for eight more judges. Right. Yeah. I mean, except just to emphasize that actually every circuit has found that money judgments are permitted in forfeiture. Casey has correctly decided, and it was not plain error for the district court to apply the laws that existed here and in every circuit at the time of imposition of sentence. So you realize that he did not address the other issues, right? Okay. You mean Mr. Oberholtzer? I thought he raised the continuance, but I will be brief. He did. Regarding the motions to continue, I'll just note that the court did not need a compelling reason to deny the motions. Under Garrett, the record makes clear. So what, from your perspective, what amount of time was the appellant allowed to be prepared for that? When did the appellant get information that was necessary for that hearing and what amount of time? Mr. Oberholtzer actually had all of the original records in his possession the entire time. The government only imaged his computer and his records when they served the search warrant. So what was that issue in these motions to continue was a copy of 11 months of that data that was seized in a search warrant served in 2012. So it was a copy of information that he already had. And he was on release at the time? I believe so. I'm not positive about that, but I believe that was the situation. So if there are no other questions. Well, in the district court, the government argued that the burden of pay for establishing forfeiture is preponderance of the evidence and defense counsel conceded. Was the district court's application of reasonable doubt standard correct or not? No. Must we reverse or can we affirm because the district court applied a higher standard? No, you're correct on the preponderance of evidence as the standard. What happened is that in the motions prior to the hearing, defense counsel argued that it should be beyond a reasonable doubt. In light of Apprendi, the Ninth Circuit has already rejected that argument. At argument, the government said preponderance of doubt. Defense counsel said, well, we'll agree to preponderance of a doubt, but we're going to reserve this issue for appeal. And the court said, well, to take care of any issues, I'm just going to apply beyond a reasonable doubt. So if there are no other questions, the government would ask that you affirm. Thank you. Thank you, counsel. The copy of the pre-sentence report that I have is on a little tiny digital device that I would have to enable in order to review. Did you look at it before you came? The pre-sentence report? Yes. No, because I didn't expect it to be at issue. And the reason is, is because whatever was represented in the pre-sentence report, my recollection is, and I was not representing Mr. Robohertz at the time, was objected to. And that was the purpose of the hearing, was to have a determination. But it gives you an idea of what the government's going to argue. So how can you be surprised if you know from the pre-sentence report that a certain amount is going to be urged upon the court for restitution purposes? Because the government itself was uncertain. When you look at those two pages as a supplemental excerpt of records, at one point they're saying $1.2 million. Within two weeks, they reduce it by $500,000. And then within two weeks of the hearing itself, they say it is going to be $699,000. The pre-sentence report would have- I think I was looking at the little page that you're talking about. And it says $721,281 maybe? Attachment A, is that? Was that what you were looking at? Well, that would be the exhibit that was relied upon and introduced by the government's witness at the time of trial.  It was a government sentencing memorandum. Yes. And that's what the defense expert, Mr. Keller, spent the Fourth of July weekend almost losing his wife trying to address and take into account. The points that Mr. Keller made were not embraced by the court. It's almost like Judge Jones either picked the government's expert, Mr. Larson, based upon that exhibit and accepted their number, and then justified it by saying, and everything else in the record, including the pre-sentence report, discounting entirely the defense expert because the defense expert did not have time, given the lack of the continuance, to prepare as fully as possible, finding out exactly not only what the government was asking for dollar-wise, but why. What was the basis for that? And how do we deal with it? What Judge Jones says is, I'm going to go with the government, Mr. Larson's exhibit, and make that the dollar amount because he was able to review the e-mails, he talked to the witnesses, he had the advantage of the investigation. Well, the defense could have done a lot of those same things had they been given the time to prepare. And time to prepare is nothing in a vacuum because not only do you need time to prepare, but you have to know not the dollar amount, but why they're saying that. So I've heard that I don't need to use all of my time. I have two seconds remaining. I'll sit down. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Hawkins, Rawlinson, Callahan